## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES HATCHER,** | : | **CIVIL ACTION NO. 1:04-CV-1872** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CONIFER REALTY LLC,** | : | |
| | : | |
| **Defendant** | : | |

### <u>MEMORANDUM</u>

Presently before the court is a motion for summary judgment by defendant

Conifer Realty LLC ("Conifer").  For the reasons that follow, the motion will be

granted.[1]

---

[1] Conifer also filed a motion (Doc. 60) to strike plaintiff's opposition because
the opposition was untimely.  Plaintiff filed a brief in opposition (Doc. 59),
responsive statement of material facts (Doc. 58), and accompanying exhibits nearly
eight months after Conifer filed its supporting documents and over four months
beyond the extended deadline the court granted following plaintiff's *seventh* motion
for an extension of time.  (<u>See</u> Doc. 53.)  The court denied plaintiff's two subsequent
motions for an extension of time.  (<u>See</u> Docs. 55, 57.)  Even absent this opposition,
the court is required to review the merits of the motion.  <u>See</u> <u>Blasi v. Attorney Gen.</u>,
30 F. Supp. 2d 481, 484 (M.D. Pa. 1998) ("[T]he district court may not grant a motion
for summary judgment . . . solely because the motion is unopposed; such motions
are subject to review for merit."); <u>see also</u> FED. R. CIV. P. 56(e) ("If the adverse party
does not so respond, summary judgment, *if appropriate*, shall be entered against the
adverse party." (emphasis added)).  The only evidence presented by Conifer in
support of its motion for summary judgment is the transcript of plaintiff's
deposition and accompanying deposition exhibits.  (<u>See</u> Doc. 40.)  In ruling on the
instant motion, the court has reviewed plaintiff's opposition papers, which mirror
plaintiff's deposition testimony.  Therefore, the court will deny the motion to strike.

I.   **Statement of Facts**[2]

Plaintiff James Hatcher ("Hatcher") is African-American.  Hatcher is a floor covering installer, which includes installing tile, cover base, rubber stair treads, and carpet.  He learned his profession working in his father's business and subsequently opened his own business in 1986.  When his business went bankrupt in 1990-1991, Hatcher worked for others as a flooring installer, either as an employee or a subcontractor.  At times, Hatcher would bid for a job as a subcontractor even though he did not have liability insurance.  At its discretion, the contractor or owner might hire Hatcher as an employee.  However, at other times, Hatcher worked as a subcontractor operating without liability insurance.  (Doc. 37 ¶¶ 1, 3-5, 8-9; Doc. 58; Doc. 40 at 37.)

In February 2003, Hatcher submitted a bid as a subcontractor to Conifer to do floor installation work at the Ivy Lane Apartments ("Ivy Lane"),[3] even though he did not have insurance at the time.  (Doc. 37 ¶¶ 2, 13; Doc. 58.)  Conifer rejected Hatcher's bid to work as a subcontractor when Hatcher asked for approximately $4,000 up-front in order to purchase insurance before he began work.  Instead, Conifer hired Hatcher in March 2003 as an employee for $20.00 per hour, inclusive of benefits, to install the carpet, resilient flooring, rubber stair treads, and walk-off

---

[2] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff, the non-moving party.  See infra Part II.

[3] Conifer was renovating apartments and townhouses at Ivy Lane.  (Doc. 37 ¶ 2; Doc. 58.)

mats at the entrances.  Hatcher was hired by Jack Burggraaff ("Burggraaff") and

the Ivy Lane site supervisor, Greg Bates ("Bates"),[4] both Caucasian.  (Doc. 37 ¶¶ 15-

16, 18, 20, 24-25; Doc. 58.)

Once working, Hatcher recruited four other individuals—Harvey Gorham,

Jeffrey Spencer, Al Johnson, and Anthony Hatcher (plaintiff's brother)—to work on

the flooring installation at Ivy Lane.  These four individuals, all African-American,

worked only part-time because there was not enough work to bring them on as full-

time employees, like Hatcher.  (Doc. 37 ¶¶ 21-23; Doc. 58.)

The renovations at Ivy Lane required work in both occupied and unoccupied

apartments.  At times, Conifer's workers had trouble with the tenants of occupied

apartments because the tenants did not trust workers in their apartments.  (Doc. 37

¶¶ 29-30; Doc. 58.)  In June 2003, two carpenters doing bathroom renovations

refused to do the work in two apartments (70 and 72) because the tenants accused

them of making a mess.  (Doc. 37 ¶ 31; Doc. 58; Doc. 40 at 170-71.)  The tenants were

both African-American women.  (Doc. 40 at 173.)  Shortly thereafter, Bates

dispatched another carpenter to finish the renovations in apartments 70 and 72.

(Id. at 170.)  Meanwhile, there were also discussions among the renovation crew

about skipping apartment 57 because the tenant got into a heated dispute with the

electricians doing work in her apartment.  The tenant, an African-American

---

[4] Bates was Hatcher's immediate supervisor.  (Doc. 37 ¶ 24; Doc. 58.)

woman, did not want the electricians sitting or placing their tool belts on her children's beds. (Id. at 173-74.)

Following the incident with apartments 70 and 72 and discussions regarding apartment 57, Hatcher learned from Burggraaff's boss that there were only two reasons that an occupied apartment should be bypassed during renovations:  (1) the tenant refused to cooperate and move furniture out of the way or (2) the tenant would not open the door to allow access to the apartment. (Id. at 171-72.)  Hatcher informed Burggraaff that he believed workers wanted to skip apartment 57 "because of some kind of spite thing that they were mad at" the tenant.  Burggraaff subsequently announced to the renovation crew:  "[W]e're not going to skip [apartment 57]." (Id. at 176.)

During Conifer's renovation work on units in proximity to apartment 57, Bates and the tenant in apartment 57 became embroiled in an acrimonious verbal dispute about whether her apartment would be bypassed. (Id. at 178-79.)  Hatcher informed Burggraaff about this altercation.  The day before renovations were to begin on apartment 57, Hatcher confirmed with Burggraaff that apartment 57 was not to be bypassed. (Id. at 179-80.)  However, Hatcher learned the next day that Bates had decided unilaterally to skip apartment 57. (Id. at 181.)  Hatcher confronted Bates and told him that his decisions to bypass apartments was discriminatory because Bates only bypassed the apartments of African-American women.  Hatcher also told Bates that he was not going to participate in this discrimination. (Id. at 181-82, 194.)  Hatcher decided that he would not work until

4

the situation was resolved (i.e., he would protest Bates' discriminatory behavior), but he ensured that all of the other workers doing floor covering stayed on the job. (Id. at 194-95, 201-02.)

Hatcher called Burggraaff to explain his perspective of the situation and Burggraaff told Hatcher that he would look into the matter. (Id. at 195.) Burggraaff eventually informed Hatcher that Bates was ordered to renovate apartment 57 and that Hatcher could return to work. (Id. at 200-01, 207.)

When Hatcher returned to Ivy Lane, Bates told Hatcher that he did not want Hatcher coming back to work because Hatcher did not support his decision to bypass apartment 57. Bates wanted to keep Harvey Gorham and Anthony Hatcher full-time because they supported his decision.[5] (Id. at 214-15.) Bates only allowed Hatcher to return as a subcontractor, not an employee, limited to doing carpet installation on steps. (Id. at 215-17.) Hatcher contacted Burggraaff because he wanted to return to his position as an employee. Burggraaff told Hatcher that he would resolve the issue with Bates and asked Hatcher to work on the steps until he did so. Hatcher agreed. (Id. at 220.) The following week, however, Burggraaff told Hatcher that he supported Bates' decision to have Hatcher work as a subcontractor. (Id. at 221, 235-37.) Hatcher objected and raised numerous issues, including the fact that he did not have liability insurance to work as a subcontractor. Burggraaff said

---

[5] During the time that Hatcher was away from the job protesting, Harvey Gorham and Anthony Hatcher were employed on a full-time basis to handle, *inter alia*, Hatcher's work. (Doc. 37 ¶ 49; Doc. 58.)

that he would see what he could do, but in the meantime that Hatcher should continue as a subcontractor.  (Id. at 221.)  After a few days, Hatcher left for a few weeks because he was disappointed that he was no longer an employee.[6]  (Id. at 237-40.)  Hatcher returned as a subcontractor for only a few more days before leaving the job site permanently.  (Id. at 241.)

During the time that Hatcher worked for Conifer, Bates made two inappropriate remarks to Hatcher.  On one occasion, Bates remarked that Hatcher's mother sounded sexy on the phone.  A month and a half later, Bates suggested that he might ask Hatcher's wife out on a date.  (Id. at 144, 147; Doc. 37 ¶ 26; Doc. 58.)

On August 23, 2004, Hatcher commenced the instant action.  (Doc. 1.)  He subsequently filed an amended complaint (Doc. 9) alleging unlawful retaliation and discrimination in employment under Title VII, 42 U.S.C. § 2000e-2, under the Civil Rights Act, 42 U.S.C. § 1981, and under the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. ANN. §§ 951-963.[7]  Conifer filed the instant motion for summary judgment and the parties have fully briefed these issues.  The motion is ripe for disposition.

---

[6] Hatcher also left because he was not paid as promised for the work he had done on the steps.  (Doc. 40 at 237.)

[7] The order of court dated May 2, 2005 (Doc. 19) dismissed Hatcher's claim of wrongful discharge under Pennsylvania common law.

## II.   <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to adduce "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III.   <u>Discussion</u>

Hatcher alleges that Conifer retaliated against him for opposing Bates' decision to bypass apartments for renovation.  He also alleges that he was subjected

to disparate treatment and a hostile work environment on the basis of his race.  The court will address these claims *seriatim*.[8]

### A.  <u>Retaliation</u>

The gravamen of Hatcher's claim is that Conifer retaliated against him for opposing the alleged discriminatory conduct of Bates.  Hatcher brings these retaliation claims under Title VII, the PHRA, and § 1981.  Under these statutes, a plaintiff can establish a *prima facie* case of unlawful retaliation by demonstrating that: "(1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action."  <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 430 (3d Cir. 2001); <u>see also</u> <u>Aguiar v. Morgan Corp.</u>, 27 F. App'x 110, 112 (3d Cir. 2002); <u>Glenn v. Horgan Bros., Inc.</u>,

---

[8] In its brief in support of the instant motion, Conifer states that Hatcher raises a constructive discharge claim.  (<u>See</u> Doc. 34 at 4, 7-10.)  "Constructive discharge occurs when an 'employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'"  <u>Spencer v. Wal-Mart Stores, Inc.</u>, 469 F.3d 311, 317 n.4 (3d Cir. 2006) (citation omitted); <u>see also</u> <u>Duffy v. Paper Magic Group, Inc.</u>, 265 F.3d 163, 167 (3d Cir. 2001).  A liberal reading of Hatcher's complaint, <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Leamer v. Fauver</u>, 288 F.3d 532, 547-48 (3d Cir. 2002), and brief in opposition to the instant motion reveals that Hatcher is not raising a constructive discharge claim.  He does not allege or argue that he resigned because of intolerable conditions.  To the contrary, Hatcher contends that he was terminated for opposing Bates' alleged discrimination.  Assuming *arguendo* that Hatcher raises a constructive discharge claim, this claim must fail.  The court finds that the alleged discrimination in the instant matter was not so intolerable that a reasonable person would resign.  Therefore, to the extent that Hatcher raises a constructive discharge claim, the court will grant summary judgment in favor of Conifer on this claim.

No. 03-6578, 2005 WL 1503428, at *2 (E.D. Pa. June 24, 2005).[9]  If a plaintiff

establishes a *prima facie* case of retaliation, <u>McDonnell Douglas</u> burden-shifting

applies:  "'[T]he burden shifts to the employer to advance a legitimate,

non-retaliatory reason for its adverse employment action.'  If the employer

advances such a position, the burden shifts back to the employee to prove that the

non-discriminatory explanation is merely a pretext for discrimination."  <u>Moss v.</u>

<u>Potter</u>, 175 F. App'x 570, 571 (3d Cir. 2006) (citing <u>McDonnell Douglas Corp. v.</u>

<u>Green</u>, 411 U.S. 792 (1973)).

   Turning to the *prima facie* case of retaliation in the instant matter, Conifer

first argues that Hatcher did not engage in a protected activity under Title VII.  The

court agrees.  The anti-retaliation section of Title VII provides:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees or applicants for
> employment . . . because he has opposed any practice made an
> unlawful *employment* practice by this subchapter . . . .

42 U.S.C. § 2000e-3(a) (emphasis added).

   In the matter *sub judice*, it is undisputed that Hatcher's opposition related to

alleged discrimination aimed at *tenants*, not employees.  In other words, Hatcher

did not oppose an unlawful *employment* practice by Conifer.  Our sister court in the

District of Delaware held that a plaintiff cannot maintain a Title VII retaliation

---

[9] The Third Circuit has held that the anti-retaliation provisions of Title VII, § 1981, and the PHRA are "governed by the same set of precedents."  <u>Fogleman v. Mercy Hosp., Inc.</u>, 283 F.3d 561, 567-68 (3d Cir. 2002); <u>Schurr v. Resorts Int'l Hotel, Inc.</u>, 196 F.3d 486, 499 (3d Cir. 1999).

claim when the "plaintiff does not allege any discriminatory action taken against an employee."[10]  Rossell v. County Bank, No. 05-195-SLR, 2006 WL 777074, at *3 (D. Del. Mar. 27, 2006); see also Lamb-Bowman v. Del. State Univ., 152 F. Supp. 2d 553, 561 (D. Del. 2001) ("Because plaintiff did not oppose a discriminatory action that is proscribed by [Title VII], plaintiff has failed to state a claim of retaliation under Title VII."), aff'd, 39 F. App'x 748 (3d Cir. 2002).  The court agrees with its sister court in Delaware and finds that Hatcher cannot maintain a Title VII retaliation claim because the alleged discriminatory conduct was not taken against an employee.[11]  Therefore, the court will grant summary judgment in favor of Conifer on the retaliation claim under Title VII.[12]

---

[10] This issue has not been addressed by the Third Circuit.  See Rossell v. County Bank, No. 05-195-SLR, 2006 WL 777074, at *2 (D. Del. Mar. 27, 2006) ("The issue of whether an employee's attempt to protect her employer's customers from discrimination by the employer is a 'protected activity' has yet to be directly addressed by the Third Circuit.").

[11] Hatcher argues that he engaged in protected activity because he opposed discrimination that he believed, in good faith, violated Title VII.  This argument is unpersuasive.  See Lamb-Bowman, 152 F. Supp. 2d at 561 n.17 (stating that "plaintiff cannot have held a 'reasonable belief' that she protested an unlawful employment practice" when she opposed discrimination suffered by students, not employees).

[12] The court notes that the Ninth Circuit stated that "requiring an employee to discriminate is itself an unlawful employment practice" under Title VII.  Moyo v. Gomez, 40 F.3d 982, 985 (9th Cir. 1994).  The court will follow its sister court in Delaware and find that Hatcher cannot maintain his Title VII retaliation claim based on Bates' alleged policy of forcing racial discrimination against the tenants.  See Rossell, 2006 WL 777074, at *2 n.2 (noting that "few courts outside of the Ninth Circuit have followed [the] approach" in Moyo and dismissing the plaintiff's Title VII retaliation claim, which alleged that plaintiff was fired for not discriminating against customers based on their race).

Unlike with Title VII, retaliation claims under § 1981 and the PHRA do not require that a plaintiff oppose an unlawful *employment* practice.  See 42 U.S.C. § 1981;[13] 43 PA. STAT. ANN. § 955.[14]  With respect to these retaliation claims, Conifer argues that Hatcher cannot establish that he engaged in a protected activity because no reasonable person could have believed that discrimination prohibited by a civil rights statute occurred when only *one* apartment was bypassed by Bates. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001) (finding that "[n]o reasonable person could have believed that the *single* incident . . . violated Title VII's standard" (emphasis added)).  The court agrees and finds that no reasonable person could have believed that racial discrimination occurred in the instant matter.

Although Hatcher initially asserted that three apartments occupied by women of color were bypassed for renovations, it is undisputed that work on two of the apartments, 70 and 72, was already underway and was only stopped temporarily

---

[13] To demonstrate that he engaged in a "protected activity" in a § 1981 retaliation claim, a plaintiff must prove that he "was acting under a good faith belief that [plaintiff's] [or someone else's] right to be free from *racial discrimination* was violated."  THIRD CIRCUIT MODEL JURY INSTRUCTIONS R. 6.1.6 (2006) (emphasis added), available at http://www.ca3.uscourts.gov/civiljuryinstructions/toc_and_instructions.htm.

[14] The PHRA prohibits an employer from discriminating against an individual who opposes "any practice forbidden by [the PHRA]."  43 PA. STAT. ANN. § 955(d).  Such forbidden practices include "discriminat[ing] against any person . . . in furnishing facilities, services or privileges in connection with the ownership, occupancy or use of any housing accommodation or commercial property because of the race [or] color . . . of any person."  Id. § 955(h)(3).

because of an altercation between the tenants and two workers.  (Doc. 40 at 171.)

Moreover, Hatcher acknowledged that the altercation was solely related to the

tenants' complaints of an accumulation of sawdust and building materials on the

sidewalk fronting their apartments, clearly unrelated to racial animus.  The single

remaining incident involving apartment 57 is simply insufficient to establish that

Hatcher engaged in protected activity based upon a reasonable belief that he was

"protesting" actions proscribed by state and federal law.[15]  Therefore, Hatcher has

failed to establish a *prima facie* case of retaliation.[16]  Accordingly, the court will

grant summary judgment in favor of Conifer on Hatcher's retaliation claims.

---

[15] The court notes that Hatcher himself is unable to state definitively what
motivated Bates' decision to bypass apartment 57.  Hatcher speculated that Bates
may have been attempting to curry favor with the female property manager who
had previously clashed with the tenant in apartment 57.  (Doc. 40 at 184-85.)
Alternatively, Bates may have been irritated with the tenant as a result of her
previous altercation with the electricians working in her children's bedroom.  (Id.)
To be sure, the court has scrutinized the record for any evidence of discriminatory
intent, but it has uncovered only personality conflicts and petty squabbling.  (See,
e.g., Doc. 40 at 173-74 ("[T]he tenant in 57 had got into a dispute with the
electricians when they were in her unit doing some work.  And if I remember
correctly, what the dispute was about was that the electricians sat on her children's
beds while they were working in her unit, and evidently she told them to get up off
her children's bed.  And it may not have been – she may have said it kind of
harshly. . . . I think she told them pretty roughly that she didn't want them sitting on
her children's bed. . . . And then, if I'm not mistaken, I think at lunchtime when
those guys left, they took their tool belts, they put their tool belts on her children's
beds, and then I think that's when they got into some kind of heated discussion
about how she expected her stuff to be respected.  And they had a big argument.")).

[16] This conclusion applies with equal force to Hatcher's retaliation claim
under Title VII.

### B.    <u>Race Discrimination</u>

Hatcher also alleges that he was subjected to disparate treatment because of his race.[17] To withstand a motion for summary judgment on a disparate treatment claim, a plaintiff must establish that his or her "protected trait played a role in the employer's decision-making process and had a determinative influence on the outcome of that process." <u>Ulitchney v. Potter</u>, No. 3:04CV991, 2006 WL 1722391, at *2 (M.D. Pa. 2006) (quoting <u>Monaco v. Amer. Gen. Assurance. Co.</u>, 359 F.3d 296, 300 (3d Cir. 2004)).  A plaintiff may meet this burden with either direct evidence, <u>see</u> <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 288 (1989) (O'Connor, J., concurring), or circumstantial evidence, <u>see</u> <u>McDonnell Douglas</u>, 411 U.S. at 802.  In the instant

---

[17]  Race discrimination is proscribed by Title VII, which provides, in pertinent part, as follows:

It shall be an unlawful employment practice for an employer --

(1)  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2)  to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000-e(2).

case, Hatcher has not provided direct evidence of discrimination based on race;[18] therefore, the court will examine his claims using the three step burden-shifting analysis set forth in <u>McDonnell Douglas</u>.[19]  Under <u>McDonnell Douglas</u>, a plaintiff must first establish a *prima facie* case of discrimination by proving the following elements:  (1) the plaintiff is a member of a protected class, (2) the plaintiff was qualified for the position he held or sought, (3) the plaintiff suffered an adverse employment action, and (4) the circumstances of the adverse employment action give rise to an inference of discrimination.  <u>Johnson v. Keebler-Sunshine Biscuits, Inc.</u>, No. 06-3219, 2007 WL 215801, at *2 (3d Cir. 2007); <u>Connors v. Chrysler Fin. Corp.</u>, 160 F.3d 971, 974 (3d Cir. 1998).

In the matter *sub judice*, Conifer does not dispute that Hatcher satisfies the first two elements—that he was a member of a protected class and that he was qualified for the position he held or sought.  For the purpose of the instant motion, the court will assume, without deciding, that a reasonable jury could conclude that

---

[18] Direct evidence is "evidence that proves an ultimate fact in the case without any process of inference."  <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 930 (3d. Cir. 1997).  An employer who discriminates "will almost never announce a discriminatory animus or provide employees or courts with direct evidence of discriminatory intent."  <u>Iadimarco v. Runyon</u>, 190 F.3d 151, 157 (3d Cir. 1999).  Therefore, a plaintiff who wishes to establish a *prima facie* case of discrimination using direct evidence "faces a high hurdle."  <u>Connors v. Chrysler Fin. Corp.</u>, 160 F.3d 971, 976 (3d Cir. 1998).  The court has found no evidence of record to suggest that Hatcher has cleared this hurdle in the instant action.

[19] Disparate treatment claims under the PHRA and § 1981 are also analyzed using the <u>McDonnell Douglas</u> framework.  <u>See</u> <u>Embrico</u>, No. 05-5495, 2007 WL 2326862, at *2; <u>Sherrod v. Phila. Gas Works</u>, 57 F. App'x 68, 73 (3d Cir. 2003) (citing <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 410 (3d Cir. 1999)).

Hatcher suffered an adverse employment action.  However, a reasonable jury could not conclude that the adverse employment action gave rise to an inference of discrimination.

A plaintiff can establish an inference of discrimination where he or she was "treated differently than similarly-situated, non-protected employees."  <u>Johnson v. Keebler-Sunshine Biscuits, Inc.</u>, No. 06-3219, 2007 WL 215801, at *2 (3d Cir. 2007). Similarly-situated employees are those who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  <u>Ogden v. Keystone Residence</u>, 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002); <u>see also</u> <u>Red v. Potter</u>, No. 05-5256, 2006 WL 3349563, at *2 (3d Cir. 2006) (stating that "in order to show that an employee is 'similarly situated,' all of the relevant aspects of employment need to be nearly identical).

In the matter *sub judice*, Hatcher offers two Caucasian employees as "similarly situated, non-protected employees."  These two employees allegedly were caught by Bates drinking alcohol on the job, but were not terminated.  In addition, both were allegedly incarcerated for several weeks, but were rehired upon release. One was also allegedly allowed to live at Ivy Lane upon release from jail.  (<u>See</u> Doc. 58 ¶ 3 at 5.)  The court finds that these two employees are not similarly situated to Hatcher.  They did not engage in the same conduct as Hatcher.  The record is devoid of any evidence that these two employees made the decision to stay off the

15

job for a period of time in protest, as was the case with Hatcher.  Hatcher offers no

other evidence that gives rise to an inference of racial discrimination.  Indeed, the

evidence demonstrates that Hatcher's position was filled by two African-Americans.

Therefore, the court finds insufficient evidence to establish an inference of

discrimination on the basis of race.  Accordingly, Hatcher has failed to establish a

*prima facie* case of discrimination and Conifer's motion for summary judgment on

this claim will be granted.[20]

## IV.   **Conclusion**

For the foregoing reasons, the court will grant Conifer's motion for summary

judgment.  An appropriate order will issue.

        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge

Dated:       October 30, 2007

---

[20] Hatcher also asserts that he was subjected to harassment (i.e., a hostile
work environment) when Bates made two inappropriate comments about Hatcher's
mother and wife.  (See Doc. 59 at 3.)  This claim cannot survive summary judgment.
The court finds that these sporadic, isolated remarks are not "sufficiently severe or
pervasive to alter the terms and conditions of [Hatcher's] employment and create
an abusive working environment."  Page v. Trustees of the Univ. of Pa., 222 F.
App'x 144, 146 (3d Cir. 2007) (quoting Meritor Savings Bank, FSB v. Vinson, 477
U.S. 57, 67 (1986)); see also id. ("[S]imple teasing, offhand comments, and isolated
incidents (unless extremely serious) will not amount to discriminatory changes in
the terms and conditions of employment."); Drinkwater v. Union Carbide Corp., 904
F.2d 853, 863 (3d Cir. 1990) ("Hostile environment harassment claims must
demonstrate a continuous period of harassment, and two comments do not create
an atmosphere.").  Accordingly, the court will grant Conifer's motion for summary
judgment on this claim.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES HATCHER,** | : | **CIVIL ACTION NO. 1:04-CV-1872** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CONIFER REALTY LLC,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 30th day of October, 2007, upon consideration of the motion

for summary judgment (Doc. 33), and the motion to strike (Doc. 60), and for the

reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.   The motion for summary judgment (Doc. 33) is GRANTED.

2.   The Clerk of Court is directed to enter JUDGMENT in favor of
     defendant and against plaintiff on all claims.

3.   The motion to strike (Doc. 60) is DENIED.

4.   The Clerk of Court is directed to CLOSE this case.


    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge